KING v. THE C. C. BENDELL COMMISSION COMPANY.

PRACTICE—JUDGMENT SHOULD FOLLOW EVIDENCE.

Where, upon the testimony, the finding should have been for a sum certain for the plaintiff or for a different sum for the defendant, a judgment arrived at by splitting the difference is arbitrary and erroneous.

*Error to the County Court of Arapahoe County.*

Mr. A. B. McKINLEY and Mr. CHARLES G. WORDEN, for plaintiff in error.

Mr. W. J. WEEBER, for defendant in error.

THOMSON, J., delivered the opinion of the court.

About the 18th day of January, 1894, Bendell and Babcock, as The C. C. Bendell Commission Company, sold to King two hundred and fifty cases of eggs for $918.75, of which sum King paid in cash, at the time of the purchase, $500, leaving an unpaid balance of $418.75, to recover which this suit was brought.

The plaintiffs were commission merchants doing business in Denver, and the defendant was a commission merchant doing business in Leadville. Shortly after the receipt by the defendant King of the eggs at Leadville, a large portion of them were found to be decayed and worthless. The defendant advised the plaintiffs of their condition, rescinded the sale, shipped a portion of them back to the plaintiffs, and notified them that the remainder in his possession were held by him subject to their order. The plaintiffs refused to receive the eggs returned, or make any order for the disposition of those in the defendant's hands.

The evidence on the part of the defendant was that when he purchased the eggs, the plaintiffs represented them to him as being sound and merchantable. The evidence for the plaintiffs was that there was nothing whatever said about their condition or quality. It was a condition of the purchase that the plaintiffs should " candle " the eggs before shipping them to Leadville, and reject those that were unsound, shipping only the remainder. " Candling " is a process, by means of artificial light, for determining the quality and condition of eggs. The plaintiffs admitted that they were to candle the eggs, but claimed that the candling was to be done under the supervision of a Mr. Palmer, who was employed by the defendant for that purpose; and that Palmer, as the defendant's agent, did in fact have charge of the candling. The defendant admitted Palmer's employment for the purpose of seeing that the candling was done, but denied that he was to have any oversight of the work, claiming that he was merely to observe whether the plaintiffs had the work

done or not, and that he had no control of it whatever, or authority to look into its details, and did not in fact give it any attention except to see that it was going on. The plaintiffs gave the defendant every opportunity to personally inspect the eggs, but he made very slight examination of them; and, according to his testimony, relied entirely upon the candling which the plaintiffs were to give them.

After the plaintiffs refused to receive the eggs, the defendant caused a portion to be sold on their account, realizing $540.35, with which he credited the plaintiffs, and held the remainder subject to their order. The cash payment made by him, and the freight and other expenses connected with the handling of the eggs, amounted to $608.10, making his net loss $67.75, for which he claimed judgment. The court rendered judgment in the plaintiffs' favor for $318.75, just $100 less than the amount of their claim; from which judgment the defendant appeals, and with which the plaintiffs express themselves dissatisfied, although they have not assigned cross errors.

The theory of the plaintiffs is that the defendant bought the eggs upon his own judgment, in that he caused them to be tested, and took them upon the test to which he subjected them, without relying upon any representation or warranty, express or implied, by the plaintiffs, so that the maxim *caveat emptor* applies to him; and their proofs tended to support their theory. On the other hand, the defendant contends that the circumstances of the sale imply a warranty by the plaintiffs that the eggs were sound and merchantable, and that by reason of the defective condition of a considerable portion of them, there was a breach of the warranty, which entitles him to remuneration for the loss which he sustained, and the evidence which he adduced was in favor of his contention.

The judgment that was rendered is entirely unexplained by anything appearing upon the record. Unless $318.75 was a purely arbitrary sum, fixed without any reference whatever to the proofs, the court must have believed $100 worth of

the defendant's evidence, and accorded the remainder of its credence to that of the plaintiffs. But the case which the proofs on either side presented furnished no basis for an apportionment of opinion. There was no line upon which the court could split its belief. One side or the other was entitled to the whole amount which it claimed. If the judgment had been for $418.75 in favor of the plaintiffs, or for $67.75 in the defendant's favor, we should not disturb it on the ground that there was no evidence to support it. As a general rule, where the findings of fact of the trial court are sustained by any substantial evidence, they are conclusive upon us; but there was no evidence from which even an inference might be drawn favorable to this judgment and it must be reversed.

*Reversed.*